IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY CO., : | | CIVIL ACTION |
| Plaintiff : | | |
| : | | |
| v. : | | |
| : | | 09-322 |
| : | | |
| GOPHER BAROQUE ENTERPRISES, LTD., : | | |
| Defendant : | | |

# MEMORANDUM

HON. GENE E.K. PRATTER   DECEMBER 29, 2010
U.S. DISTRICT COURT JUDGE

Gopher Baroque Enterprises, Ltd., d/b/a Sunpower Builders ("Gopher Baroque"), is a construction contractor that was both remodeling and building an addition onto the house of Michael and Sophie Hayes in February 2008. During construction, a temporary kitchen was assembled for the Hayes in the basement/ground floor of their house, but, unfortunately the dishwasher in this temporary kitchen caught fire shortly after the water in the house was turned off.[1] The house suffered extensive damage.

Plaintiff State Farm Fire and Casualty Co. ("State Farm") filed the instant subrogation action against Gopher Baroque to recover the sums the insurer paid to the Hayes for the damage caused by the fire. Gopher Baroque subsequently filed two third-party complaints. One is a products liability action against BSH Home Appliances Corporation ("BSH"), the manufacturer of the dishwasher, alleging BSH should be held liable for the fire-related damages under theories

---

[1] The parties and witnesses refer to this location variously as the basement or the ground floor. As the Court understands it, the Hayes house is built on an incline such that the basement level has egress to the backyard, and is, in fact, the ground floor if one views the house from the rear. For purposes of this opinion, however, "basement" shall be used to refer to this level of the house.

of strict liability, negligence, and/or breach of warranty. The other third-party claim is a negligence action against R. Scott Young, d/b/a R. Scott Young Plumbing & Heating Company ("Young"), the plumbing subcontractor working on the Hayes's remodeling, alleging that Young should be held liable for the damages under a negligence theory.

BSH and Young each now move for summary judgment on the third-party actions. Young argues that in the absence of evidence suggesting Young was involved in the wiring of the dishwasher to its temporary power supply, Gopher Baroque cannot demonstrate causation such that Young could be held liable for negligence. (See Docket No. 41) BSH contends that Gopher Baroque cannot maintain its claims because it failed to adduce any expert testimony suggesting that a manufacturing defect caused the fire, such that Gopher Baroque cannot sustain its burden to prove liability pursuant to any of its strict liability, negligence, or breach of warranty claims. (See Docket No. 37) BSH also moves to preclude the introduction of expert testimony by both Gopher Baroque and Young. (See Docket No. 40)

Following oral argument by which the interested parties supplemented their written submissions, these issues are now ripe for disposition. For the reasons outlined below, the Motions for Summary Judgment of both BSH and Young are GRANTED. Because, as discussed below, the Court has granted the Motion for Summary Judgment of BSH while assuming *arguendo* that Gopher Baroque could rely on all produced existing expert testimony, the Motion to Preclude Expert Testimony is DENIED as MOOT.

# I. BACKGROUND

## A. *Factual Background* [2]

The fire that prompts this claim occurred at the residence of Michael and Sophie Hayes on February 28, 2008. At that time, Gopher Baroque was in the midst of a construction project on the Hayes's house. During the course of this renovation, in early December 2007, Gopher Baroque arranged for a temporary kitchen to be established in the Hayes's basement because the renovation work in the actual kitchen rendered it unusable. In establishing this temporary kitchen, employees of third-party defendant Young, a plumbing contractor, attached the relevant water-access lines to the dishwasher (a product manufactured by third-party defendant BSH). The dishwasher had been hard-wired to the house when originally installed in the kitchen. Joseph Garges, the Gopher Baroque employee supervising the Hayes renovation, testified that he and another employee cut the wire connecting the dishwasher to the house and brought it to the basement for use in the temporary kitchen. Power was then supplied to the relocated dishwasher via an extension cord that was spliced to the wire remaining on the machine.

On February 28, 2008, Young's employees were working on the plumbing system and had to shut off the water supply to the house. A Young employee named Doug Kulp encountered Mrs. Hayes on her way to start a load of laundry, and told her not to run the appliance as the men were on the verge of turning off water to the house. Mrs. Hayes testified that while she did not start the laundry after having spoken with Mr. Kulp, she did not recall then that she had recently started the dishwasher, which proceeded to run without water. Approximately 10 to 15 minutes

---

[2] The following factual recitation reflects undisputed facts. To the extent there are disputes concerning any of the factual matters set out in this background, those disputes are noted.

3

after the water was shut off, the dishwasher in the basement caught fire. The fire caused extensive damage, partially due to the ready fuel of a wooden structure around the dishwasher and several canisters of propane stored nearby for use with a temporary camp-style stove.

State Farm paid for the relevant damage pursuant to the Hayes's first party homeowner's property policy, and filed the instant subrogation action against Gopher Baroque. State Farm affirmatively, and BSH defensively, allege that the fire resulted from the manner in which employees of Gopher Baroque installed the dishwasher, specifically that the fire was caused by electrical arcing that resulted from the inappropriate use and unsafe splicing of an extension cord to connect the dishwasher with an electric socket. Gopher Baroque, in turn, alleges that the fire resulted from a material defect within the dishwasher that caused it to burst into flames when the water was shut off. Specifically, Gopher Baroque claims that BSH and Young are jointly and severally liable for the fire-related damages under product liability theories of strict liability, negligence, and/or breach of warranty and under a negligence theory of failure to warn, respectively.

Subsequent to the fire, several experts examined the dishwasher in an attempt to ascertain the cause of the fire. This examination occurred on May 28, 2008. Present were experts retained by State Farm, BSH, Young, and Gopher Baroque, respectively. Follow-up testing of the dishwasher occurred in February 2010. At issue is whether Gopher Baroque, to the extent it requires expert testimony to prevail on its theories, has adduced sufficient expert testimony to create material issues of fact that would allow Gopher Baroque's claims to survive the pending motions for summary judgment. The expert reports and testimony are summarized for reference.

Michael Wald, the expert hired by State Farm, concluded, he said, to a reasonable degree

of engineering certainty that the fire was the result of an improper connection of the electrical supply wiring to the dishwasher by Gopher Baroque, in violation of the manufacturer's instruction, the National Electric Code, and accepted industry standards of care. In his report, Mr. Wald considered his inspection of the dishwasher at an evidence storage facility and the depositions of many individuals associated with the project site. Notably, Mr. Jon Costanza and Mr. Sean Allen Wilde both testified at deposition that they observed the fire in the lower-right corner of the dishwasher. Mr. Wald observed that the damage pattern reflected on the dishwasher indicated that the fire started in the right front corner, that the only possible source of ignition in that area of the appliance was the nearby connection of the electrical supply wiring to the fixed wiring of the dishwasher, and that this connection displayed severe electrical faults having occurred by arcing and the severing of the connectors. Wald Report, December 28, 2009. Mr. Wald concluded that the fire could not have been due to the motor overheating because, even though it was located near the fire, there were no indications of localized overheating or electrical failures.

Roger Boyell, the expert hired by BSH, concluded to a reasonable degree of engineering certainty that he agreed with Mr. Wald's conclusion that "this fire originated due to the failure of the improperly made splices between the extension cord and the dishwasher wiring." Boyell Report, January 29, 2010. Mr. Boyell reviewed several deposition transcripts and other material, conducted a site visit, and participated in the evidence examination that took place on May 28, 2008. At the examination, Mr. Boyell noted that there was no indication that any of the safety mechanisms contained within the dishwasher (notably one that refrained from triggering the electric heater in the absence of water and one that cuts electrical power if the water approaches

5

boiling) had failed. He observed that the area of highest damage was located in the area beneath the dishwasher mechanism, where plumbing and electrical connections were made. The end of the electrical supply wire was beaded, indicating that an arc had occurred there.

Frank Welsh, the expert hired by Young, noted in his initial report that the motor of the machine in proximity to the area of the most intense burn. He observed that there was balling on the end of the main leads into that area of the dishwasher, but opined that while this balling was the result of electrical activity, the activity was secondary in nature and was an effect rather than a causal factor. He noted that if the stranded cord may have been a modified extension cord, and if so it was not in accordance with code. Mr. Welsh opined that the fire started with the motor over-heating, though the cause of that over-heating is, according to Welsh, unknown. Welsh Report, July 7, 2008. Mr. Welsh then filed a supplemental report on January 30, 2010. In his supplemental report, Mr. Welsh stated that the manner in which the appliance was connected to the power source was a major suspect, but that the evidence was not strong enough to render that connection to be the only suspected culprit in the starting of the fire. He further stated, to a reasonable degree of professional certainty, that the cause of the fire could be determined absent further destructive or non-destructive examination and possible testing. He stated that the cause could be the failure of the motor as stated in his first report, the cause might also be a design or product fault in the machine such that it caught fire when the water pressure ceased.

Larry Morgan, the expert hired by Gopher Baroque, filed a preliminary report on January 18, 2010, in which he concluded "to a reasonable degree of engineering certainty that the cause of the dishwasher fire that occurred at the Hayes residence on February 28, 2008, must be considered undetermined until further investigation is conducted and all other reasonable,

alternative possible causes are specifically excluded." He noted that the connections observed on the dishwasher did not appear to meet the requirements of electrical codes and generally accepted industry practice. Mr. Morgan took particular note that the dishwasher may have run dry for ten to fifteen minutes before the fire started, and indicated that the short timeline strongly suggested a cause and effect relationship. Mr. Morgan's conclusion that further testing was required before he could issue a conclusion about the cause of the fire was due to the fact that certain hypotheses were not fully examined at the May 28, 2008 examination of the dishwasher. In particular, Mr. Morgan indicated that he wanted to confirm whether the fire might have started in a fashion similar to dishwasher fires that occurred in other, recalled products, and that he wanted data on the outcomes when the model of dishwasher was run without water.

### B. *Procedural Background*

State Farm filed this subrogation action against Gopher Baroque to recover benefits paid to the Hayes to compensate them for the fire-related damage to their house. Gopher Baroque filed third-party complaints against BSH and Young. Gopher Baroque claims that the fire was caused by either a manufacturing defect in the dishwasher or by Young's negligence in failing to identify the wiring issue or failing to confirm that all machines requiring water in the house were not in use before the water was shut off such that the lack of water caused the fire.

BSH filed a motion for summary judgment against Gopher Baroque, arguing that because Gopher Baroque failed to present record evidence establishing that a manufacturing defect caused the fire, Gopher Baroque cannot sustain claims sounding in strict liability, negligence or breach of warranty. Young, in turn, filed its motion for summary judgment against Gopher

Baroque, arguing that Gopher Baroque cannot prevail in the absence of evidence demonstrating that Young had any responsibility with regard to the dishwasher's wiring, that Young was negligent in shutting the water off, or that the dishwasher running without water caused the fire.

BSH further filed a motion to preclude the introduction of the expert testimony of Larry Morgan (Gopher Baroque's expert) and Frank Welsh (Young's expert), arguing that neither expert is reliable and that neither expert report assists the trier of fact in determining the ultimate issue.

These motions will be addressed in turn.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district

court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Specifically, the non-moving party must raise more than "some metaphysical doubt" as to a material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is appropriate if the non-moving party fails to rebut the movant's factual presentation by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### III. DISCUSSION

#### A. *Products Liability Claims Against BSH*

In its Third-Party Complaint (Docket No. 14), Gopher Baroque alleges that the damage and injuries allegedly sustained by plaintiff resulted directly and proximately from the conduct of third-party defendant BSH, the manufacturer of the offending dishwasher. Gopher Baroque specifically alleges that BSH should be liable for the alleged damage and injuries under theories of strict liability (Count I), negligence (Count II), and/or breach of warranty (Count III). See generally Third-Party Compl. BSH filed a Motion for Summary Judgment (Docket No. 37), in which it contends that determining the cause of the fire involves complex technical issues beyond the common understanding of a layperson, such that Gopher Baroque must present expert

testimony in order to explain these issues to a jury. See Mot. ¶¶ 17-22. BSH further argues that since Gopher Baroque has failed to present any expert testimony that *conclusively* identifies its product as the source and/or cause of the fire, summary judgment in favor of BSH must be granted. See id. ¶¶ 9-10, 13-14, 16-19, 24.

**i. Legal Framework**

To bring a strict products liability action in Pennsylvania, "a plaintiff must demonstrate that (1) the product was defective; (2) the defect existed while the product was in the control of the manufacturer; and (3) the defect was the proximate cause of the plaintiff's injuries." Mracek v. Bryn Mawr Hospital and Intuitive Surgical, Inc., 610 F. Supp. 2d 401, 404 (E.D. Pa. 2009) (citing Walton v. Avco Corp., 530 Pa. 568, 610 A.2d 454, 458-59 (1992)); see also Parks v. Allied Signal, Inc., 113 F.3d 1327, 1330-31 (3d Cir. 1997). Gopher Baroque must adduce evidence not just of the origin of the fire, but specifically of the *cause* of the fire in order to survive a motion for summary judgment. See State Farm Fire and Casualty Co. v. Holmes Products, et al., 165 Fed. Appx. 182, 187 (3d Cir. 2006); Chester Valley Coach Works v. Fisher-Price, Inc., 2001 WL 1160012, at *12-13 (E.D. Pa. Aug. 29, 2001); Pappas v. Sony Electronics, Inc., 136 F. Supp. 2d 413, 423 (W.D. Pa. 2000).

Where the cause of an injury is arguably complex, a party must produce expert testimony on causation to survive a motion for summary judgment. See Oddi v. Ford Motor Co., 234 F.3d 136, 159 (3d Cir. 2000). Absent expert testimony, a reasonable jury cannot find from the evidence adduced that a manufacturing or design defect in the dishwasher at issue here *caused* the fire at issue. Chubb v. On-Time Wildlife Feeders, 578 F. Supp. 2d 737 (M.D. Pa. 2008);

Booth v. Black and Decker, Inc., 166 F. Supp. 2d 215 (E.D. Pa. 2001). In presenting expert testimony as to a fire's cause, "[w]here a fire investigator identifies the cause of a fire in terms of probabilities (as opposed to mere possibilities) by eliminating all but one reasonable potential cause, such testimony is highly probative." Breidor v. Sears, Roebuck and Co., 722 F.2d 1134, 1138 (3d Cir. 1983). However, "[a] trial court is not precluded from granting summary judgment merely because expert testimony is admitted. If, even given the proffered expert testimony, the proponent 'still has failed to present sufficient evidence to get to the jury,' summary judgment is appropriate." In re: TMI Litigation, 193 F.3d 613, 716 (3d Cir. 1999) (citing Heller v. Shaw Industries, Inc., 167 F.3d 146, 152 (3d Cir.1999)).

### ii. Analysis

Here, Gopher Baroque argues that the testimony of Mr. Frank Welsh, the expert hired by Young, creates a material issue of fact as to the cause of the fire such that BSH's motion for summary judgment should be denied. See Penn National Insurance Co. v. HNI Corp., 245 F.R.D. 190, 193-94 (M.D. Pa. 2007) (noting that one party may rely upon the testimony of another party's expert witness where that expert witness and his report have been, via a Rule 26(b)(2) designation, brought within the universe of material discoverable by all parties).

In his first report, dated July 7, 2008, Mr. Welsh noted his observation of the "signature of intense heat indicating the region of the start of the blaze," and that while "the electrical connection box is located pretty much in the area of the 'hot spot,'" "the motor resides directly behind the box." He observed that there was balling on the end of the main leads into that area of the dishwasher, but opined that while "this balling was the result of electrical activity," such

11

"activity is secondary in nature [and] is an effect rather than a causal factor." He noted that the stranded cord may have been a modified extension cord, and if so it was not in accord to code. Mr. Welsh provided no theory as to how it might have happened, but stated "it is [his] opinion that the fire started with the motor over heating."

Mr. Welsh then filed a "supplemental report" on January 30, 2010. In his supplemental report, Mr. Welsh stated that "[t]he manner in which the appliance was connected to the power source is a major suspect," but that "the evidence, in [his] opinion, is not strong enough to make a case, only perhaps resulting in eliminating all other suspected culprits." He then presented another possibility, notably that the dishwasher could have contained a design defect such that it burst into flame when it was run for fifteen minutes without water. He further stated that "while many unsupported theories have been put forth, the cause of the blaze cannot be determined without conducting further either non-destructive and/or destructive examination and possible testing." He then stated that while the cause of the fire *may* still be a failure of the motor, as stated in his first report, the cause *might also* be a design or product fault in the machine such that it caught fire when the water supply ceased.

At his deposition, taken on April 15, 2010 after both his reports were filed, Mr. Welsh indicated that when he wrote his first report, he did not have a strong opinion about the *cause* of the fire, although he did have some *theories*. Welsh Dep. 6:15-7:11, Apr. 15, 2010. He then stated that in January 2010, when writing his supplemental report, he had another "very remote theory" that the dishwasher firmware had malfunctioned when the water supply was cut off but that he had no opinion as to the cause of the fire. Id. at 8:9-10:3. As of the date of his deposition, Mr. Welsh continued to eschew stating any opinions as to the cause of the fire,

12

instead reiterating that he "still ha[s] some suspicions," none of which rise to the level of an opinion as to the cause of the fire. Id. at 10:21-11:5.

Gopher Baroque contends that the above-described testimony of Mr. Welsh creates a material issue of fact as to the cause of the fire that started in the dishwasher, and serve as expert testimony that the fire was caused by a defect in the dishwasher. However, as summarized above, Mr. Welsh not only does not provide an opinion as to cause, but also does not opine upon the probability that any one of his "theories" explains the cause of the fire. Absent an expression of Mr. Welsh's opinion as to the cause of the fire, Gopher Baroque cannot rely upon Mr. Welsh's reports and testimony to create a material issue of fact. See Breidor, 722 F.2d at 1136-38 (noting that an expert's testimony about the cause of a fire should have been heard by a jury where that expert "had eliminated *all* possible causes of the fire except for an electrical malfunction in the thermostat." (emphasis in original)). Furthermore, Gopher Baroque has adduced no competent evidence that some component of the dishwasher caused the fire such that it cannot establish this element of strict liability and summary judgment must be granted.[3]

---

[3] Although Gopher Baroque does not expressly present its strict liability claim as such, it remains the case that where a plaintiff cannot produce "direct evidence of a product's defective condition, and thus, the precise nature of the product's defect, a plaintiff, in appropriate cases, can rely on the 'malfunction theory' of products liability." Mracek, 610 F. Supp. 2d at 407 (citing Woodin v. J.C. Penney Co., 629 A.2d 974, 975 (Pa. Super. Ct. 1993)); see also Barnish v. KWI Building Co., et al., 980 A.2d 535 (Pa. 2009) (detailing the elements and proof required to bring a strict products liability case pursuant to a malfunction theory in Pennsylvania). The malfunction theory of products liability "allows the plaintiff to prove a defect in a product with circumstantial evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." Pappas, 136 F. Supp. 2d at 427 (citing Rogers v. Johnson & Johnson Products, Inc., 565 A.2d 751, 754 (Pa. 1989)). However, as Gopher Baroque has "failed to come forward with evidence . . . showing the absence of reasonable secondary causes," it cannot prove a product malfunction with circumstantial evidence, and summary judgment must be granted. See id. at 428.

Where a party fails to establish a cause of action for strict products liability, that party cannot sustain a cause of action for breach of warranty. Mracek, 610 F. Supp. 2d at 407 (citing Simeone v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 680 n.5 (E.D. Pa. 2005)). Similarly, where a party fails to establish a cause of action for strict products liability due to the absence of evidence of causation, that party also fails to establish a cause of action for negligence. See id. at 408-09 (citing Krentz v. Consol. Rail Corp., 910 A.2d 20, 27-28 (Pa. 2006) (describing the elements required to establish a prima facie negligence claim in Pennsylvania)). Because Gopher Baroque did not adduce competent evidence of the *cause* of the fire at issue in this litigation to survive summary judgment as to its strict liability claim, it cannot sustain its breach of warranty and negligence claims, and summary judgment must be granted as to those as well.

## B. *Negligence Claims Against Young*

In its Third-Party Complaint (Docket No. 13), Gopher Baroque alleges that the damage and injuries allegedly sustained by plaintiff resulted directly and proximately from the conduct of third-party defendant Young, the subcontractor responsible for plumbing at the Hayes's residence. Gopher Baroque specifically alleges that Young should be held liable for the alleged damage and injuries because those injuries were caused by the negligence of Young's employees, negligence which allegedly includes, *inter alia*, a failure to warn the Hayes, a failure to inspect, and the creation of a dangerous condition. See generally Third-Party Compl.

Young filed a Motion for Summary Judgment (Docket No. 41), in which it contends that Gopher Baroque cannot introduce any evidence that Young had anything to do with the wiring of the dishwasher such that summary judgment should be granted. Gopher Baroque argues in

14

response that, assuming the dishwasher was improperly wired and that this improper wiring caused the fire, Young should have aware of that circumstance and should have remedied the situation. In the alternative, Gopher Baroque argues that Young's actions in shutting off the water supply to the Hayes house caused the fire. (Docket No.44) In its Reply, Young asserts that its employees had nothing to do with the wiring of the dishwasher, and indeed that the wiring was not visible such that it could have a duty to notice and correct faulty wiring. Young further argues that Gopher Baroque has adduced no evidence that the dry operation was the cause of the fire such that its motion for summary judgment should be granted. (Docket No. 48)

As discussed above, Gopher Baroque has not adduced expert evidence that the *cause* of the fire was either an internal component malfunction or the dry-running of the dishwasher, and thus its argument that Young could be found liable because its cessation of the water supply caused the fire fails. Gopher Baroque's remaining theory, that Young could be held liable for negligently failing to notice and correct the wiring on the dishwasher, is discussed below.

**i. Legal Framework**

Pennsylvania law places the burden on the plaintiff to establish the existence of negligence on the part of the defendant by proving four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. Estate of Swift v. Northeastern Hosp. of Philadelphia, 690 A.2d 719, 722 (Pa. Super. 1997) (citing Pittsburgh National Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. 1994)). "The existence of a duty is a question of law for the court to decide." R.W. and C.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005). To determine whether to impose a duty, the

15

court focuses on five factors: "(1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing the duty; and (5) the overall public interest in the proposed solution." Id. at 747. "Regarding the third factor, duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." Id. (citing Griggs v. BIC Corp., 981 F.2d 1429, 1435 (3d Cir. 1992)).

**ii. Analysis**

Here, the Court understands Gopher Baroque to be arguing that Young, assuming *arguendo* that the allegedly faulty wiring under the dishwasher caused the fire, had a duty to remedy that problem or at least to warn another party about the allegedly faulty wiring. See Hr'g Tr., 42-43, Sept. 16, 2010. However, Gopher Baroque did not specifically argue why, in light of the factors identified in R.W. and C.W. v. Manzek, the Court should impose such a duty to remedy wiring or to warn another party about that wiring.

Gopher Baroque did not specify evidence that any employee of Young actually knew of the allegedly faulty wiring such that he would or should be in a position to act upon knowledge of that wiring. As argued by Young and unrebutted by Gopher Baroque at the motions hearing, the wiring problem was hidden from view so even if the plumber had a duty to report bad wiring, there is no record evidence that any plumber was capable of seeing the faulty connection. Hr'g Tr. 22-23, Sept. 16, 2010. Because Gopher Baroque did not introduce evidence that an employee of Young knew of the potentially hazardous situation, Gopher Baroque cannot establish that Young, or any of its employees/agents, engaged "in conduct which foreseeably creates an

unreasonable risk of harm to others." Manzek, 888 A.2d at 746. Absent such evidence, it would be improper for the Court to impose a duty to warn or correct electrical problems on a plumbing subcontractor. Because Gopher Baroque cannot establish that Young owes a duty to warn or correct, Gopher Baroque cannot establish an element of its negligence claim such that Young's Motion for Summary Judgment must be granted.

### C. *Motion to Exclude Expert Testimony*

Because BSH's Motion for Summary Judgment was granted assuming *arguendo* that the expert reports of Larry Morgan and Frank Welsh were admissible, BSH's Motion to Preclude Expert Testimony is denied as moot.

### IV. CONCLUSION

For the reasons discussed above, the Court will grant the Motions for Summary Judgment of both BSH and Young, and will deny BSH's Motion to Exclude Expert Testimony. An appropriate Order follows.

BY THE COURT:

GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE